UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
BRINK'S GLOBAL SERVICES USA, INC., a :
Delaware Corporation,
: Civil Action No. 17-CV-6509 (JSR)
       Plaintiff,
:
   -against-
:
MIDWEST GOLDBUYERS, INC., a dissolved
Illinois Corporation,
:
       Defendant.
:
------------------------------------ X

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION
FOR A PRELIMINARY INJUNCTION**

Plaintiff Brink's Global Services USA, Inc. ("Brink's" or "Plaintiff"), by its attorneys, Troutman Sanders LLP, respectfully submits this memorandum of law in support of it Motion for a Preliminary Injunction against Defendant, Midwest Goldbuyers, Inc. ("Midwest" or "Defendant"), enjoining and restraining Midwest from (i) maintaining or prosecuting its suit against Claude Birge, in the lawsuit titled *Midwest Goldbuyers, Inc., v. Claude Birge*, Case No. 2017-L-005362, filed in the Circuit Court of Cook County, Illinois, Law Division and (ii) disclosing confidential information in violation of the terms of a Settlement Agreement.

**I.     PRELIMINARY STATEMENT**

Brink's seeks to enjoin and restrain Midwest from prosecuting a lawsuit, currently pending in Illinois state court (the "2017 Lawsuit"), and from continuing to disclose confidential information. The claims in the 2017 Lawsuit have already been settled by a valid and binding settlement agreement executed by Midwest and Brink's (the "Settlement Agreement"). Specifically, the Settlement Agreement resolved an early lawsuit, originally filed in 2012 (the "2012 Lawsuit"), which arose from

the same purported wrongdoing at issue in the 2017 Lawsuit. Now, Midwest appears to be having second thoughts regarding settlement and is seeking, for a second time, to recover for the exact same alleged injury by suing Claude Birge, Brink's' former employee and agent, despite the fact that Birge is covered by a broad release given by Midwest in the Settlement Agreement.

A preliminary injunction is supported by well-established contract principles and will prevent irreparable harm to Birge and Brink's. Fundamentally, the Settlement Agreement is a contract between Midwest and Brink's, whereby Brink's "purchased" from Midwest a promise that Brink's and its agents would not face further litigation arising from the underlying dispute. This promise is evidenced, in part, by the contractually agreed-to mutual release and confidentiality provisions set forth in the Settlement Agreement. Brink's bargained for the repose and finality associated with resolving litigation, such that it was willing to pay Midwest, not just for a dismissal, but also the end to all disputes and disruption, through the mutual release and confidentiality provisions. Despite receiving and retaining the settlement funds, Midwest has breached its contract by filing a second, substantially identical lawsuit against Birge.

Absent an injunction, Brink's will suffer irreparable harm. Once again Birge and Brink's must respond to the same allegations, resulting in undeniable stress and anxiety to Birge, the disclosure of Brink's' confidential information, and the loss of Brink's' and its agents' benefits under the Settlement Agreement. To prevent any further irreparable harm to Brink's and Birge, Brinks respectfully requests that this Court enjoin Midwest from prosecuting the 2017 Action and from disclosing any confidential information regarding the 2012 Lawsuit. A preliminary injunction is warranted because the underlying dispute has already been resolved.

## II. STATEMENT OF RELEVANT FACTS

On or about March 8, 2010, Midwest and Brink's entered into a contract for Brink's' delivery of Midwest's merchandise. On September 21, 2011, September 28, 2011, and November 15, 2011, Brink's took possession of and agreed to deliver Midwest's merchandise ("the Shipments").

On or about November 15, 2012, Midwest filed the 2012 Lawsuit against Brink's in the Supreme Court of the State of New York, County of New York bearing Index Number 653947/12. Midwest alleged that each of the Shipments weighed less upon delivery than when Brink's gained possession, resulting in a loss to Midwest. The 2012 Lawsuit was discontinued and settled through the Settlement Agreement, dated January 30, 2017.

The relevant terms of the Settlement Agreement are summarized as follows:

- Section 3 of the Settlement Agreement, entitled "Mutual Releases," releases both parties and their agents from past and future claims relating to the 2012 Lawsuit.

- Section 5 of the Settlement Agreement, entitled "Confidentiality," prohibits the parties from disclosing information related to the 2012 Lawsuit or the transactions underlying the 2012 Lawsuit. Section 5 of the Settlement Agreement also prohibits the parties from disclosing the terms and conditions of the Settlement Agreement. Section 5 of the Settlement Agreement further provides that if Midwest breaches the confidentiality provision of the Settlement Agreement it shall immediately forfeit the full settlement amount (the "Settlement Amount") and shall be liable for Brink's costs and expenses relating to the breach, including attorneys' fees.

- Section 10 of the Settlement Agreement, entitled "Governing Law," states that New York is the exclusive jurisdiction for any actions arising out of the Settlement Agreement.

The accompanying declaration of Frank Russo ("Russo Declaration"), corporate counsel for Brink's, describes the terms of the Settlement Agreement and the irreparable harm that Brink's will suffer if a preliminary injunction is not granted.

On or about June 25, 2017, Midwest commenced the 2017 Lawsuit in Illinois state court against Claude Birge ("Birge"), who was an employee and agent of Brink's when the Shipments took place. A copy of the complaint is attached as Exhibit A to the Russo Declaration. The allegations in Midwest's Complaint are directly related to the 2012 Lawsuit and constitute violations of the Settlement Agreement's covenant not to sue, confidentiality provision, and jurisdiction provision.

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 on the basis of diversity of jurisdiction. The parties are completely diverse and the amount in controversy exceeds $75,000.

**A.     Complete Diversity Exists.**

Brink's is a Delaware corporation with a principal place of business in the Commonwealth of Virginia. Midwest is an Illinois corporation with a principal place of business in the State of Illinois.

**B.     The Amount in Controversy Exceeds $75,000.00.**

Pursuant to the Settlement Agreement, Midwest contractually agreed that if it breached a confidentiality provision in the Settlement Agreement, 1) it would forfeit the full amount of the settlement payment made to Midwest by Brink's and 2) it would be liable for any costs or expenses, including attorneys' fees, resulting from the breach. Midwest breached the contract, including the confidentiality provision, when it filed the 2017 Lawsuit. Brink's continues to defend against that lawsuit, as well as enforcing its rights in this Court, and therefore continues to incur attorneys' fees as a result of Midwest's breach. Accordingly, Brink's is requesting damages that exceed the sum of $75,000, consisting of the full amount of the prior settlement and attorneys' fees incurred to date and on an ongoing basis. The Settlement Agreement permits the award of attorneys' fees.

## III.     ARGUMENT

**A.     The All-Writs Act permits this Court to enjoin the state court litigation.**

Under the All-Writs Act, 28 U.S.C. § 1651(a),[1] district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).[2][3] As the Second Circuit repeatedly has noted, "'[t]he equity power of a court to give injunctive relief against vexatious litigation is an ancient one which has been codified in the All Writs Statute.'" *Sassower v. Abrams,* 833 F. Supp. 253, 268 (S.D.N.Y. 1993) (quoting *Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir.1990)). The All-Writs Act grants this Court, under certain circumstances, the power to "enjoin parties from filing further lawsuits." *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999) (citing *Shuffman v. Hartford Textile Corp.*, 613 F.2d 388, 390-91 (2d Cir. 1979) (noting that, under the All-Writs Act, the district court may, sua sponte, enjoin "frivolous and vexatious claims")). Per the Second Circuit, those

---

[1] A district court's authority under the All-Writs Act is limited by the Anti-Injunction Act, 28 U.S.C. § 2283, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The second exception applies here. The second exception "where necessary in aid of [the federal court's] jurisdiction," 28 U.S.C. § 2283, is triggered only if "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case," *see Atl. C.L. R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295, 90 S. Ct. 1739 (1970).

Here, the proper venue for any dispute regarding the Settlement Agreement is a New York court, state or federal, as the parties agreed. Nonetheless, Midwest filed the 2017 Lawsuit in Illinois state court. In response, and to enforce the Settlement Agreement, Brink's filed the instant action in this Court. This Court's jurisdiction cannot be disputed. However, this Court's "flexibility and authority to decide [the] case," is seriously impaired by the fact that the state court, an improper venue, could easily enter an inconsistent ruling regarding the Settlement Agreement. If the 2017 Lawsuit proceeds, any determination by the Illinois state court would impair this Court's flexibility and authority to resolve the parties dispute regarding the Settlement Agreement.

[2] Courts require that the non-movant party be given notice and opportunity to be heard before imposing an injunction. *MLE Realty Assocs.*, 192 F.3d at 261. There is no dispute that Midwest has been given notice and an opportunity to be heard.

[3] However, "the traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant." *In re Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir.1984).

5

circumstances "include cases where a litigant engages in the filing of repetitive and frivolous suits." *Keyes v. Nassau Cnty. Police Dep't*, No. 17-cv-1783, 2017 U.S. Dist. LEXIS 102274, at *4 (E.D.N.Y. June 30, 2017) (citing *Malley v. N.Y. City Bd. of Educ.*, 112 F.3d 69 (2d Cir. 1997) (filing injunction may issue if numerous complaints filed are based on the same events) and *In re Martin-Trigona*, 9 F.3d 226, 227-28 (2d Cir. 1993)).

Brink's Motion for Preliminary Injunction fits squarely within the All-Writs Act and this Court has clear authority to grant an injunction. The underlying facts of the 2017 Lawsuit and the 2012 Lawsuit are substantially identical and relate to the same transaction. Midwest's claims, however, have been resolved, and Midwest has received bargained-for compensation, as evidenced by the Settlement Agreement. The 2017 Lawsuit is inextricably intertwined with the Settlement Agreement. In light of the explicit and negotiated language of the Settlement Agreement, the claims asserted in the 2017 Lawsuit are duplicative and vexatious, and should be enjoined. Importantly, if the 2017 Lawsuit proceeds there is a risk of inconsistent interpretations of the Settlement Agreement. Thus, Midwest's transparent attempt to use the court's time and resources to doubly recover must be enjoined, and a preliminary injunction is warranted.

**B.** **This case satisfies the elements for granting a preliminary injunction.**

A preliminary injunction is warranted both under the All-Writ Acts and Rule 65 of the Federal Rules of Civil Procedure. Pursuant to Rule 65, Brink's can easily satisfy the elements necessary to enjoin Midwest from (i) maintaining or prosecuting its suit against Birge, in the lawsuit titled *Midwest Goldbuyers, Inc., v. Claude Birge*, Case No. 2017-L-005362, filed in the Circuit Court of Cook County, Illinois, Law Division and (ii) disclosing confidential information in violation of the terms of the Settlement Agreement.

It is well established that "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88, 94 S. Ct. 937, 39 L.Ed.2d 166 (1974). Following *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008), the Second Circuit has described the test for injunctive relief as "(i) a likelihood of irreparable harm; (ii) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (iii) that the balance of hardships tips in their favor regardless of the likelihood of success; and (iv) that an injunction is in the public interest." *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 604 (2014). All four factors favor an injunction.

### 1. Brinks is likely to succeed on the merits.

The Amended Complaint asserts claims for breach of contract (Counts I & II), declaratory judgment (Count III), and preliminary and permanent injunction (Count IV). All of these claims arise from the Settlement Agreement, which governs this lawsuit. The language of the Settlement Agreement confirms that Brink's is likely to succeed on the merits.

#### a. The Settlement Agreement is valid and enforceable.

"Settlement agreements are strongly favored in New York and may not be lightly cast aside." *Willgerodt ex. Re. Majority Peoples' Fund for the 21 Century v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997). Indeed, "[a] settlement is a contract, and once entered into is binding and conclusive." *Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir. 1989). Absent a showing of "fraud, collusion, mistake or accident," a court will not set aside a settlement. *Willgerodt ex. Re. Majority Peoples' Fund for the 21 Century*, 953 F. Supp. at 560 (citing *Rivera v. State*, 115 A.D.2d 431, 432 (1st Dep't 1985)).

Here, there is no claim or evidence to warrant setting aside the Settlement Agreement. Throughout the 2012 Lawsuit, including settlement discussions, Midwest was represented by counsel of its choice. Midwest had ample time to review the Settlement Agreement and its terms. More importantly, Midwest had the opportunity to negotiate the settlement terms, which included the scope of the mutual release and confidentiality. Midwest represented and warranted that it had read, understood and authorized the Settlement Agreement and that it was entered into freely and voluntarily. Midwest contractually agreed to include both parties' agents as part of the mutual release, and agreed that it would not disclose information related to the 2012 Lawsuit or the transactions underlying the 2012 Lawsuit. Midwest has no basis for arguing, and has not claimed, that the Settlement Agreement is not fully enforceable in accordance with its terms.

Further, Midwest agreed to bring any and all suits arising out of or in connection with the Settlement Agreement in New York. Pursuant to Section 10 of the Settlement Agreement, "any action, suit or other proceeding arising out of or in connection with this Agreement shall be commenced only in the state or federal courts sitting in New York County, New York and irrevocably submits to the exclusive jurisdiction of said courts." Midwest has violated this agreement with the filing of the 2017 Lawsuit.

      **b.**      **The Settlement Agreement releases Birge from liability and mandates confidentiality.**

The Settlement Agreement clearly releases Birge from liability and includes a confidentiality provision. The Second Circuit has repeatedly held that "settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Hostcentric Techs. v. Republic Thunderbolt, LLC,* No. 04 Civ. 1621, 2005 U.S. Dist. LEXIS 11130, at *10 (S.D.N.Y. June 2, 2005) (determining that emails exchanged between the parties

constituted an enforceable settlement agreement) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)).

In accordance with general principles of contract law, an unambiguous contract must be interpreted "according to the plain meaning of its terms." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002)). Here, the unambiguous contract terms, including the mutual release and confidentiality clauses, must be given their plain meaning. The plain meaning of "agent," contained in the mutual release, clearly includes employees of Brink's, like Birge, and thus, Birge has been released from liability. Similarly, the plain language of the confidentiality clause governs the 2017 Lawsuit.

Brink's is likely to succeed on the merits of its claims. First, regarding Count I, Midwest breached the mutual release when it filed a lawsuit against Birge, Brink's' agent. The 2017 Lawsuit is substantially identical to the 2012 Lawsuit such that the claims asserted in the 2017 Lawsuit have been released. Both Lawsuits involve Brink's' Shipments in September and November 2011. (Exh. A ¶ 4). Specifically, in both Lawsuits Midwest alleges that the Shipments weighed less upon delivery resulting in a loss to Midwest. (*Id.* at ¶¶ 6, 7).

Further, the mutual release contained in the Settlement Agreement is so broad that it constitutes a covenant not to sue. The real indicator of whether a settlement agreement constitutes a release or a covenant not to sue is prospective language. Where a release addresses "known events that . . . transpired prior to execution" of the agreement, it is a release and not a covenant not to sue. *See Standard Sec. Life Ins. Co. of N.Y. v. Berard*, 684 Fed. Appx 56, 60 (2d Cir. 2017). Where the agreement addresses future events, it is a covenant not to sue. *See Colton v. New York Hosp.*, 414 N.Y.S. 866, 873 (N.Y. Sup. Ct. 1979); *see also Manti Transp., Inc. v. Assoc. Comm. Corp.,* No. 00-

cv-6807, 2002 U.S. Dist. LEXIS 3738 (E.D.N.Y. Mar. 8, 2002). The mutual release in the Settlement Agreement broadly encompasses prospective issues. The release includes those claims "known, unknown, discovered, undiscovered, and undiscoverable losses, indemnities, suits, damages, interest, penalties, costs and claims of all natures and descriptions whatsoever related to the Lawsuit . . . ." New York Courts have held this release language to be "quite broad." *See U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 267 (S.D.N.Y. 2017). Midwest promised not to bring additional lawsuits when it executed the Settlement Agreement and it breached this promise when it filed the 2017 Lawsuit.

Regarding Count II, Midwest breached the confidentiality provision because the 2017 Lawsuit contains information related to the 2012 Lawsuit and its underlying transactions. As noted above, the 2017 Lawsuit describes the 2012 Lawsuit's underlying transaction in clear violation of the Settlement Agreement's confidentiality clause.

Lastly, in Count III, Brink's seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), declaring that the Settlement Agreement is and remains valid and has full force and effect over the Parties, their agents, and other individuals listed in the Settlement Agreement and affected by its terms. As noted above, the Settlement Agreement is valid and enforceable. Further, its terms and scope cannot be disputed. Brink's is entitled to declaratory relief and will likely prevail on Count III. Because Brink's is likely to succeed on the merits of the instant lawsuit, a preliminary injunction is warranted.

2. **Birge and Brink's will suffer irreparable harm in the absence of a preliminary injunction.**

Unless enjoined and restrained, Midwest will proceed with the 2017 Lawsuit and continue to violate (i) the release of Birge and (ii) Midwest's confidentiality obligations. The irreparable harm is imminent and goes beyond the monetary costs required to defend against the 2017 Lawsuit.

Absent an injunction 1) Birge will continue to endure the stress, distraction and burdens that arise from having to defend against the 2017 Lawsuit; and 2) Brink's will be deprived of the benefits it bargained for when it executed the Settlement Agreement. Further, any breach of the confidentiality provision is the epitome of irreparable harm because once protected information is publicly disclosed, the disclosure cannot be undone. *See Vringo Inc. v. ZTE Corp.*, no. 14-cv-4988, 2015 U.S. Dist. LEXIS 71919, at *32 (S.D.N.Y. June 3, 2016) ("Indeed, once such commercially-sensitive information becomes public knowledge, it cannot be made secret again.") (quotation omitted). The court in *Vringo* granted a motion for preliminary injunction, in part, because it determined that the non-movant's "cavalier" treatment of a non-disclosure agreement coupled with the value of the confidential information, imposed an imminent risk of irreparable harm such that an injunction was warranted. *Id.* Similarly, here, Midwest's flagrant disregard for the terms of the Settlement Agreement suggest that they will continue to violate its terms if not enjoined. And the injury will be irreparable. For example, no action or monetary award can reverse the disclosure of confidential information. Accordingly, issuance of a preliminary injunction will maintain the status quo that the parties duly negotiated in the Settlement Agreement.

Permitting the 2017 Lawsuit to proceed simultaneously with the instant lawsuit undermines the value that New York courts place on settlements and settlement agreements.[4] "No litigant or court could rely on the finality of a settlement agreement were it possible to so easily invalidate such contracts." *Harriprashad v. Metro. Prop. & Cas. Ins. Co.*, No. 09 Civ. 3205, 2014 U.S. Dist. LEXIS 131241, at *61 (E.D.N.Y. Aug. 14, 2014). The purpose of a settlement agreement is to

---

[4] The parties contractually agreed that the Settlement Agreement is governed by New York law and that the exclusive venue for any dispute related to the Settlement Agreement would be the state or federal courts sitting in New York County, New York.

bring finality to the dispute. Thus, if Midwest continues to prosecute the 2017 Lawsuit, despite having a valid Settlement Agreement, including a mutual release, the likelihood that similar actions, *i.e.* filing duplicative lawsuits involving settled disputes, only increases. Parties will be reluctant, if not unwilling, to engage in settlement discussions if they cannot trust that any resulting agreement represents a final resolution to their dispute.

Lastly, Brink's' request for injunctive relief is supported by the recognized societal value of the parties' freedom to contract. Courts consistently recognize that the public has an interest in enforcing parties' freedom of contract. *Cf. Kramer v. Lockwood Pension Services, Inc.*, 653 F. Supp. 2d 354, 378 (S.D.N.Y. 2009) (In discussing the enforceability of an incontestability clause within an insurance policy, reiterated the principle "[f]reedom of contract itself is deeply rooted in public policy.") (quoting *New England Mut. Life Ins. Co. v. Caruso*, 73 N.Y.2d 74, 81 (N.Y. 1989)).

Accordingly, Brink's and Birge will suffer irreparable harm if a preliminary injunction is not granted.

### 3. The balance of equities weighs in Brink's' favor.

The balance of equities tips in Brink's' favor. As stated above, Brink's and Birge will suffer irreparable harm if the 2017 Lawsuit proceeds. Birge will continue to endure the stress and burdens associated with defending the 2017 Lawsuit and Brink's will be deprived of its bargained-for benefits under the Settlement Agreement. By contrast, a preliminary injunction will not harm Midwest. Midwest will suffer no prejudice or harm by being required to comply with its agreement during the pendency of this action, and during this time will continue to retain the benefits it received under the Settlement Agreement.

### 4. An injunction is in the public interest.

As noted above, New York has a strong public policy favoring settlements and settlement agreements. Further, courts have long recognized the broader societal value of freedom of contract. An injunction vindicates both of these values and is in the public interest. Absent an injunction, Midwest will continue to flout its contractual obligations and undermine the finality of the Settlement Agreement. Parties should be able to bargain for and receive repose in the context of negotiated settlements that include complete releases and covenants to maintain confidentiality. Permitting Midwest to continue the 2017 Lawsuit would render the Settlement Agreement ineffectual and threaten the integrity of similar agreements.

## IV. CONCLUSION

For the foregoing reasons, Brink's requests that this Court grant its Motion for Preliminary Injunction and enjoin Midwest from (i) maintaining or prosecuting its suit against Claude Birge, in the lawsuit titled *Midwest Goldbuyers, Inc., v. Claude Birge*, Case No. 2017-L-005362, filed in the Circuit Court of Cook County, Illinois, Law Division and (ii) disclosing confidential information in violation of the terms of the Settlement Agreement.

Dated: New York, New York
October 27, 2017

TROUTMAN SANDERS LLP
875 Third Avenue
New York, New York 10022
212-704-6000

By: */s/ Stephen G. Rinehart*
Stephen G. Rinehart
stephen.rinehart@troutmansanders.com

*Attorneys for Plaintiff*
*Brink's Global Services USA, Inc.*

**CERTIFICATE OF SERVICE**

       I, Stephen G. Rinehart, an attorney, certify that on this 27th day of October, 2017, service of a true and complete copy of the foregoing ***Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction*** was made upon the following via e-mail and U.S. Mail:

To:    James A. Karamanis, Esq.
         Barney & Karamanis LLP
         180 N. Stetson, Suite 2050
         Two Prudential Plaza
         Chicago, Illinois 60601
         james@bkchicagolaw.com

                                                      TROUTMAN SANDERS LLP
                                                      875 Third Avenue
                                                      New York, New York 10022
                                                      212-704-6000


                                                      By:*/s/ **Stephen G. Rinehart***
                                                      Stephen G. Rinehart
                                                      stephen.rinehart@troutmansanders.com

                                                      *Attorneys for Plaintiff*
                                                      *Brink's Global Services USA, Inc.*